## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Respondent, | ) |
| | ) |
| v. | ) |
| | ) Case No. 2:16-cr-20050-SLD-EIL |
| JOHN F. GHERNA, | ) |
| | ) |
| Defendant-Petitioner. | ) |

### ORDER

Before the Court are Defendant-Petitioner John F. Gherna's *pro se* Motion Under 28
U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Pro Se
2255 Motion"), ECF No. 49, counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255
("Counseled 2255 Motion"), ECF No. 55, and motion for a status conference, ECF No. 61.  For
the reasons that follow, the Counseled 2255 Motion is DENIED, and the remaining motions are
MOOT.

### BACKGROUND

On June 15, 2016, a criminal complaint was filed charging Gherna with knowingly
possessing and distributing child pornography.  Compl. 1, ECF No. 1.  Gherna was arrested and
Assistant Federal Public Defender Elisabeth Pollock was appointed to represent him.  *See* June
15, 2016 Min. Entry.  Subsequently, he was indicted by a grand jury on one count of receipt of
child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1) and one count of
possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).
Indictment 1–2, ECF No. 9.

The case was set for trial to begin December 6, 2016.  Aug. 19, 2016 Min. Entry.  On
November 7, 2016, the Government moved, *in limine*, for an order admitting evidence of

Gherna's prior child molestation offense at trial under Federal Rule of Evidence 414.  *See* Mot. Limine 1–2, ECF No. 15.[1]  The trial was continued to March 14, 2017 on Gherna's motion.  *See* Nov. 21, 2016 Min. Entry.  Gherna filed his response to the motion *in limine* on December 5, 2016.  Resp. Mot. Limine 1, ECF No. 17.  He argued that evidence of his prior offense would be substantially more prejudicial than probative, so it should be barred under Rule 403.  *Id.* at 1–3.  By written order, Judge Colin Bruce, then presiding over the case, granted the Government's motion.  *See generally* Jan. 9, 2017 Order, ECF No. 19.  He noted that the parties agreed that the prior offense met the requirements for admissibility under Rule 414(a).  *See id.* at 2, 7.  And he concluded the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice because: the prior conviction was similar to the instant offense in that "both were motivated by [Gherna's] sexual interest in pre-teen and teenage females"; even though it was fifteen years old, it fell "within an acceptable range based upon the case law"; it was "relevant to show his interest in pre-teen and teenage girls"; any prejudice was not unfair simply because of the disturbing nature of the prior conviction; and the Government sought to prove the prior conviction through court documents rather than by calling the victim to testify.  *Id.* at 8–15.

On March 6, 2017, Gherna entered a plea guilty of to both counts of the indictment without a plea agreement.  *See* Mar. 6, 2017 Min. Entry.  His plea was accepted by Judge Bruce on March 21, 2017.  Order Approving R&R, ECF No. 24.

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing.  PSR, ECF No. 27.  USPO found that Gherna's total offense level was 32, *id.* ¶ 52, and that his criminal history category was VI, *id.* ¶ 65.  As such, it found that his Sentencing Guidelines range for imprisonment was 210 to 262 months on count one and

---

[1] Alternatively, the Government sought its admission under Rule 404(b).  Mot. Limine 1.

210 to 240 months (the statutory maximum) on count two.  *Id.* ¶ 99.  Gherna faced a mandatory

minimum fifteen-year term of imprisonment on count one and a mandatory minimum ten-year

term of imprisonment on count two.  *Id.* ¶¶ 97–98.

Gherna filed one objection to the PSR—to an enhancement for obstructing justice based

on conversations he had with his family about what to say to law enforcement, *id.* at 28—which

Judge Bruce overruled at the sentencing hearing held on July 7, 2017, Sentencing Hr'g Tr. 9:14–

25, ECF No. 48 (finding that there was "sufficient evidence . . . that . . . Gherna . . . was . . .

trying to influence and create a defense by having people . . . . testify falsely or manufacture a

defense").  Thus, Judge Bruce found the PSR accurately stated the applicable penalties.  *See,*

*e.g.*, *id.* at 10:15–19, 11:4–13.

The Government requested a sentence of 220 months (or eighteen and one-third years) of

imprisonment and a fifteen-year term of supervised release.  *Id.* at 14:13–19.  Gherna requested a

sentence of fifteen years on count one and ten years on count two—the mandatory minimums—

to be run concurrently.  *Id.* at 15:10–13.  He did not object to the Government's request for

fifteen years of supervised release.  *Id.* at 19:11–21.  Judge Bruce found that, based on the factors

set forth in 18 U.S.C. § 3553(a), the appropriate term of incarceration was between fifteen and

twenty years, or seventeen and one-half years, which also happened to be the low end of the

Sentencing Guidelines range.  *Id.* at 27:15–25.  He sentenced Gherna to the agreed upon fifteen

years of supervised release as well.  *Id.* at 28:12–15.

Gherna appealed.  Not. Appeal, ECF No. 36.  Pollock moved to withdraw on the basis

that an appeal would be frivolous.  *See United States v. Gherna*, 717 F. App'x 626, 626 (7th Cir.

2018) (mem.).  In her motion to withdraw, Pollock explored "whether Gherna could contest the

imposition of a two-level adjustment for obstruction of justice" based on his conversations with

family, but the Seventh Circuit found that she "properly conclude[d] that doing so would be frivolous." *Id.* at 627. The Seventh Circuit noted that Gherna "prompted his family about what to say, advised that they 'commit it to memory,' and recited facts that they should have known without any encouragement or reminder (such as whether they were living at the house and using Gherna's computer)." *Id.* Pollock also explored "whether Gherna could challenge the reasonableness of his" sentence, but the Seventh Circuit found that because the sentence was within the Sentencing Guidelines range it was presumptively reasonable and noted that it perceived no reason to rebut that presumption. *Id.* The Seventh Circuit allowed Pollock to withdraw and dismissed Gherna's appeal as frivolous on April 4, 2018. *Id.* at 626–27.

In February 2020, Gherna filed the Pro Se 2255 motion, in which he argued that his due process rights were violated during his guilty plea and sentencing because Judge Bruce was biased in favor of the Government and that Judge Bruce violated the federal recusal statute, 28 U.S.C. § 455, by failing to recuse himself. *See* Pro Se 2255 Mot. 4–5.[2] These claims are based on *ex parte* communications between Judge Bruce and the United States Attorney's Office for the Central District of Illinois ("USAO") which became public in 2018. *See United States v. Atwood*, 941 F.3d 883, 884–85 (7th Cir. 2019) (providing a brief explanation of the discovery and disclosure of the communications).

Judge Bruce recused himself from hearing Gherna's § 2255 motion and the matter was reassigned to this Court. Feb. 25, 2020 Text Order of Recusal. The Court appointed counsel to represent Gherna with respect to the motion. Mar. 27, 2020 Text Order. Counsel filed the Counseled 2255 Motion on September 29, 2020, *see* Counseled 2255 Mot. 1, mooting the Pro Se

---

[2] The Court uses the page numbers generated by CM/ECF as the Pro Se 2255 Motion is not consistently paginated.

2255 Motion.[3]  The Counseled 2255 Motion reasserts the due process and § 455(a) claims.  *See id.* at 1–2.  It also adds a claim that the Federal Public Defender's Office ("FPD") provided Gherna with ineffective assistance of counsel by failing to include claims based on Judge Bruce's *ex parte* communications in Gherna's appeal and by failing to obtain agreements with the Government to toll the time for Gherna to bring his claims in a § 2255 motion.  *Id.* at 23–24.

The Government filed a response arguing that Gherna cannot show that Judge Bruce was actually biased against him, that his § 455(a) claim is untimely[4] and, in any case, that a violation of § 455(a) is not cognizable under 28 U.S.C. § 2255, and the ineffective assistance of counsel claim is meritless.  *See* Resp. 1, ECF No. 59.  No reply was filed.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack."  *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

---

[3] In the Counseled 2255 Motion, Gherna asserts that he "does not withdraw any claims from his *pro se* filing," Counseled 2255 Mot. 1, but as the counseled filing reasserts all the claims from the Pro Se 2255 Motion, the Court finds the Pro Se 2255 Motion moot.

[4] The Government concedes that the due process claim is timely because a tolling agreement covers this claim, Resp. 23, and that the ineffective assistance of counsel claim is timely as Gherna claims he learned of the ineffectiveness in January 2020, *id.* at 25.

II.    **Analysis**

A.  **Due Process and Section 455 Claims**

Both the due process and § 455(a) claims are based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, a year after Gherna was sentenced and months after his appeal was dismissed.  These communications have been detailed and summarized elsewhere.  *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).  Gherna argues that these communications demonstrate that Judge Bruce was actually biased against him, violating his due process rights, and, alternatively, that they demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28 U.S.C. § 455(a).  *See* Counseled 2255 Mot. 12–13.

1.  **Due Process**

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'"  *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)).  A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable."  *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285, 287 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here.  In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied

primarily on the *ex parte* communications but the communications did not concern the

defendant's case.  It noted that the Special Committee appointed by the Judicial Council of the

Seventh Circuit to review complaints against Judge Bruce related to the communications "found

no evidence and received no allegation that Judge Bruce's conduct or ex parte communications

impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks

omitted).  Moreover, the court noted that though the communications exposed a preexisting

relationship with members of the USAO, such a relationship "alone does not create a due process

violation." *Id.* at 1062.  It found that the defendant had "presented no evidence to rebut th[e]

presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks

omitted).  Gherna relies on the same communications that were relied on in *Williams* and

considered by the Special Committee, and he points to no emails that concern his case

specifically, *see* Counseled 2255 Mot. 15, or any other evidence that would show that Judge

Bruce's conduct impacted the rulings in this case, *see id.* at 5–12, 14–16.

      In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's

sentencing hearing, as opposed to only his trial, may warrant a different result under the due

process clause because judges have considerable discretion at sentencing.  *Shannon*, 39 F.4th at

884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could

have been interpreted as a warning that if the defendant appealed, he would impose a harsher

sentence.  *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due

process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte*

communications and the comments.  *See id.* at 884 (declining to resolve the constitutional issue

and instead remanding for resentencing under the court's supervisory authority).  Here, Gherna

points to no similar comment at sentencing that would lend itself to a finding that Judge Bruce

was biased against him.  Instead, Gherna is relying on the *ex parte* communications alone.  *See*

Counseled 2255 Mot. 14–15.

The Court thus finds that Gherna has failed to show either actual bias or a risk of bias so

high that it violates due process.  The due process claim is denied.

### 2.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which

his impartiality might reasonably be questioned."  The Government does not address whether

Judge Bruce's impartiality might reasonably have been questioned and, thus, whether he should

have recused himself from Gherna's case under § 455(a).[5]  It does argue, however, that this

statutory claim is both untimely and not cognizable.  Resp. 23–25, 37–44.

### a.  Timeliness

Pursuant to the Antiterrorism and Effective Death Penalty Act, a federal prisoner seeking

to vacate his sentence under § 2255 has one year to do so, from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by
governmental action in violation of the Constitution or laws of the United States
is removed, if the movant was prevented from making a motion by such
governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme
Court, if that right has been newly recognized by the Supreme Court and made
retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could
have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

---

[5] To the Court's knowledge, the Government has conceded an appearance of impropriety—and thus a violation of
§ 455(a)—in every case involving Judge Bruce's communications that has been decided by the Seventh Circuit so
far.  *See, e.g.*, *Atwood*, 941 F.3d at 885; *Williams*, 949 F.3d at 1063; *United States v. Orr*, 969 F.3d 732, 738 (7th
Cir. 2020).

Gherna acknowledges that his Pro Se 2255 Motion was filed outside the one-year statute of limitations provided by 28 U.S.C. § 2255(f)(1) but argues that he is entitled to equitable tolling of the statute of limitations because Federal Public Defender Thomas Patton made a legal error and failed to preserve Gherna's right to raise a claim based on Judge Bruce's failure to recuse from his case.  Counseled 2255 Mot. 3.[6]  The Government responds that Gherna is not entitled to equitable tolling because "[t]here is no evidence . . . that [the] FPD ever counseled [him] to wait to file his § 2255 motion" and because Gherna "sat on his hands knowing that he had to timely file his § 2255 claims."  Resp. 24–25.

The time limits set forth in § 2255(f) are subject to equitable tolling.  *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that the statute of limitations for § 2254 motions are subject to equitable tolling); *Lombardo v. United States*, 860 F.3d 547, 551–52 (7th Cir. 2017) (applying the equitable tolling doctrine to a motion under § 2255).  A petitioner is entitled to equitable tolling if he can show: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."  *Holland*, 560 U.S. at 649 (quotation marks omitted).  "[T]he threshold necessary to trigger equitable tolling is very high, lest the exceptions swallow the rule."  *United States v. Marcello*, 212 F.3d 1005, 1010

---

[6] The Court cannot ascertain whether Gherna contends his motion is timely under § 2255(f)(2), (3), or (4).  He states that there are "a few exceptions to the on[e]-year period of limitations in cases where there was an impediment from making a motion," citing to § 2255(f)(2), (3), and (4).  Counseled 2255 Mot. 3.  But he makes no argument that any of these provisions apply.  Instead, he goes on to argue for equitable tolling, *id.*, which is a common law doctrine distinct from the statutory provisions, *cf. Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013) (distinguishing between common law equitable tolling and § 2255(f)(2)).  In any case, the Court finds that Gherna's motion is not timely under § 2255(f)(2), (3), or (4).  Because Gherna does not allege that any government action created an impediment to filing a § 2255 motion, § 2255(f)(2) does not apply.  And because Gherna does not rely on a new right recognized by the Supreme Court, § 2255(f)(3) does not apply.  The Government argues that even if § 2255(f)(4) applies, the Pro Se 2255 Motion was filed outside the statute of limitations because it was filed more than a year after Gherna could have learned of Judge Bruce's improper communications.  Resp. 23–24.  The Court agrees, though it declines to conclusively determine when the limitations period under § 2255(f)(4) began to run.  The Government provided a letter from Patton to Gherna dated November 26, 2018 informing him of the communications.  *See* Patton Letter, Gov't App. 127–28, ECF No. 60-1 at 1–2.  At the latest, then, Gherna should have been aware of the communications in late 2018 when he received this letter.  His Pro Se 2255 Motion was not filed until February 2020, which was more than a year later.

9

(7th Cir. 2000).  "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling."  *Mayberry v. Dittmann*, 904 F.3d 525, 529–30 (7th Cir. 2018).

Gherna barely develops his argument that he has met both elements of the *Holland* test. He cites *Holland* for the proposition that "[a]n attorney's unprofessional conduct can be so egregious as to create an extraordinary circumstance warranting equitable tolling" but then merely states that Patton told him he made a legal error and failed to preserve his right to bring a claim based on Judge Bruce's failure to recuse.  *See* Counseled 2255 Mot. 3 (quotation marks omitted).  Gherna does not acknowledge that in *Holland*, the Supreme Court held that "a garden variety claim of excusable neglect . . . does not warrant equitable tolling," *Holland*, 560 U.S. at 651–52 (quotation marks and citations omitted), or that the facts of *Holland* are quite distinguishable from the facts of his case.  In *Holland*, the Supreme Court found that the attorney's conduct "may well" have warranted equitable tolling because the facts showed that it went well beyond simple negligence: the attorney did not file the petitioner's § 2254 petition on time despite the petitioner sending "many letters that repeatedly emphasized the importance of his doing so"; he did not research the applicable filing date; he did not inform the petitioner that the Florida Supreme Court had decided his case despite the petitioner's "many pleas for that information"; and the attorney "failed to communicate with his client over a period of years, despite various pleas from [the petitioner] that [the attorney] respond to his letters."  *Id.* at 652. The Court remanded for further consideration because "no lower court ha[d] yet considered in detail the facts of th[e] case to determine whether they indeed constitute extraordinary circumstances sufficient to warrant equitable relief."  *Id.* at 653–54.  Gherna points to no facts— and cites no further cases—to support his argument that Patton's legal mistake would go beyond

10

mere negligence and support a finding of extraordinary circumstances warranting equitable
tolling. *See Ademiju v. United States*, 999 F.3d 474, 477 (7th Cir. 2021) ("[I]ncorrect legal
advice generally does not by itself trigger equitable tolling.").  Moreover, Gherna merely states
in a conclusory fashion that he "diligently filed his *pro se* filing upon learning of the mistake."
Counseled 2255 Mot. 3.  But "mere conclusory allegations of diligence are insufficient."
*Mayberry*, 904 F.3d at 531.

The Court concludes that Gherna has failed to establish his entitlement to equitable
tolling, so it finds his § 455(a) claim untimely.

### b.  Cognizability

Even if the Court found the § 455(a) claim was timely, it would not warrant relief.
Section 2255 "was intended to afford federal prisoners a remedy identical in scope to federal
habeas corpus." *Davis v. United States*, 417 U.S. 333, 343 (1974).  Although the language of
§ 2255 suggests that a prisoner can obtain relief if his sentence was imposed in violation of the
"laws of the United States," § 2225(a), not "every asserted error of [nonconstitutional] law can
be raised on a § 2255 motion." *Davis*, 417 U.S. at 346.  The "appropriate inquiry [i]s whether
the claimed error of law was a fundamental defect which inherently results in a complete
miscarriage of justice, and whether it presents exceptional circumstances where the need for the
remedy afforded by the writ of habeas corpus is apparent." *Id.* (quotation marks and alterations
omitted); *see also Reed v. Farley*, 512 U.S. 339, 348 (1994) (noting the standard as whether the
federal law violation qualifies as "a fundamental defect which inherently results in a complete

miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure" (alteration in original) (quotation marks omitted)).[7]

Two circuit courts have addressed whether a § 455(a) claim is cognizable on a § 2255 motion.[8] In *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990), the Fifth Circuit found the relevant inquiry to be "whether there was an appearance of impropriety which rose to the level of a fundamental defect resulting in a complete miscarriage of justice." *Id.* (quotation marks omitted). It held that "[a]bsent that level of severity, the claim of an appearance of impropriety is not cognizable under 28 U.S.C. § 2255." *Id.* It noted that "section 455 and the Due Process Clause are not coterminous" and that "conduct violative of section 455 may not constitute a due process deficiency." *Id.* And it appeared to hold that a § 455(a) claim is only cognizable where the § 455(a) violation falls "within [a] protected constitutional dimension" where § 455 and the Due Process Clause overlap. *Id.* at 82, 83.[9]

In *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989), the Second Circuit assumed without deciding "that as a general matter collateral attack upon a criminal sentence may be available under section 2255 to pursue a claim of appearance of impartiality." It made this

---

[7] Although *Reed* involved a motion under 28 U.S.C. § 2254, *Reed*, 512 U.S. at 347, the Supreme Court held that the same standard that applies to determining whether a nonconstitutional federal law violation is cognizable on § 2255 review applies to § 2254 cases, *id.* at 353–54.

[8] In an unpublished opinion, the Tenth Circuit addressed a § 455 bias claim on § 2255 review because the petitioner "assert[ed] that he was unaware of the facts allegedly warranting recusal when direct review was available." *United States v. Austin*, 48 F.3d 1233, at *1 & n.2 (10th Cir. 1995) (table opinion) (citing *Hardy v. United States*, 878 F.2d 94, 97 (2d Cir. 1989)). But as this case is unpublished and does not analyze this issue specifically, it is not persuasive, and the Court will not address it here.

[9] The Fifth Circuit's precise holding as it relates to the facts of the case is not clear. The district judge considering the defendant's § 2255 motion had resentenced the defendant "to comply with the spirit and beyond of *Liljeberg* [*v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)]." *Couch*, 896 F.2d at 80 (quotation marks omitted). The Fifth Circuit found that the alleged § 455(a) violation did not fall within protected constitutional dimensions warranting § 2255 relief. *Id.* at 82, 83 ("We conclude and hold that Couch's claims of an appearance of impropriety do not rise to the level of a fundamental defect in due process cognizable under 28 U.S.C. § 2255."). It noted that by resentencing the defendant, the district judge had accorded him "a measure of process well beyond that due on the facts of his case," but that it was "within [the judge's] power to do so." *Id.* at 82. The Fifth Circuit does not make explicit what gave the judge the power to resentence the defendant but seemed to hold that it was not required or warranted under § 2255.

12

assumption based on the Supreme Court's decision in *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847 (1988). *Liljeberg* involved a motion under Federal Rule of Civil Procedure 60(b)(6) to vacate a civil judgment on the basis that the judge should have recused himself under § 455(a). *Liljeberg*, 486 U.S. at 858, 863. Rule 60(b)(6) allows district courts to grant relief from a final civil judgment in "extraordinary circumstances." *Id.* at 863–64 (quotation marks omitted). The Supreme Court held that

> in determining whether a judgment should be vacated for a violation of § 455(a), it is appropriate to consider the risk of injustice to the parties in the particular case, the risk that the denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process.

*Id.* at 864. The Second Circuit in *Hardy* noted initially that it "doubt[ed] that an *appearance* of impropriety under section 455(a), without more, [would] constitute[] the type of 'fundamental defect' that would justify vacating an otherwise lawful sentence under section 2255." *Hardy*, 878 F.2d at 97. It reasoned that, after *Liljeberg*, it was "not certain" whether the Court would similarly hold that a criminal judgment may be collaterally attacked based on an appearance of impropriety but concluded that "the analogy [wa]s sufficiently close to warrant" the assumption that it would "for purposes of [that] appeal." *Id.* The only dispositive holding from the Second Circuit in *Hardy*, however, was that the defendant could not obtain relief under section 2255 because she was aware of the basis for the judge's recusal when direct appeal was available. *Id.* at 98.

Like in *Couch*, the Court finds that a § 455(a) claim could be cognizable on § 2255 review, but only if it meets the standard laid out in *Davis*. Under that standard, the alleged § 455(a) error must be "a fundamental defect which inherently results in a complete miscarriage of justice" and "present[] exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent." *Davis*, 417 U.S. at 346 (quotation marks omitted).

13

Here, the alleged error does not rise to that level.  As noted above, Gherna has not

established a due process violation and has no evidence that any of Judge Bruce's

communications or relationships with the USAO impacted his proceedings or prejudiced him.

*Cf. Bachner v. United States*, 517 F.2d 589, 597 (7th Cir. 1975) ("The remote and theoretical

possibility that a complete miscarriage of justice might have occurred is not enough to satisfy the

Davis test, when in fact no injustice has been done."); *Reed*, 512 U.S. at 350–52 (finding a state

court's failure to comply with the Interstate Agreement on Detainers was not cognizable on

§ 2254 review where the defendant did not object and no prejudice resulted because the case

"lack[ed] aggravating circumstances rendering the need for the remedy afforded by the writ of

*habeas corpus* . . . apparent" (second alteration in original) (quotation marks omitted))).  Though

Gherna argues that Judge Bruce made a discretionary ruling in granting the Government's

motion *in limine* and that this ruling impacted his decision to plead guilty, Counseled 2255 Mot.

2, 3, he makes no argument that the appearance of bias impacted Judge Bruce's ruling on the

motion.[10]  And any violation of § 455(a) would have no bearing on Gherna's guilt or innocence.

*See Hussong v. Warden*, 623 F.2d 1185, 1185, 1191 (7th Cir. 1980) (finding that a § 2254

"petitioner's incarceration in violation of section 2515 of the federal wiretap statute d[id] not

meet the required 'complete miscarriage of justice' standard required of nonconstitutional

violations of federal law in order to be cognizable under the federal habeas corpus statute,"

noting in part that "the issues he ask[ed] [the court] to redetermine h[ad] no bearing on the basic

---

[10] In any case, Judge Bruce's ruling was not a close discretionary call.  *Cf. Orr*, 969 F.3d at 739–41 (considering whether Judge Bruce made close discretionary calls in determining whether his failure to recuse was harmless error). Judge Bruce's ruling was well-supported by case law from across the country and in the Seventh Circuit.  *See, e.g.*, *United States v. Roux*, 715 F.3d 1019, 1026 (7th Cir. 2013) ("Our cases addressing the admission of molestation evidence have recognized the substantial prejudice that it necessarily poses to any defendant; yet, we have regularly sustained the admission of such evidence when probative of a defendant's motive, intent, or other pertinent (and admissible) factor."); *United States v. McGuire*, 627 F.3d 622, 627 (7th Cir. 2010) (acknowledging that evidence of prior child molestation offenses is admissible under Rule 414 to demonstrate propensity).

justice of his incarceration" and that nothing in the record indicated he was not guilty (quotation marks omitted)).  Moreover, Gherna was sentenced at the low end of his Guidelines range.

The Court does not find that *Liljeberg* requires a different result.  *Liljeberg* identified three factors for determining whether a civil judgment should be vacated under Rule 60(b)(6) due to extraordinary circumstances.  *See Liljeberg*, 486 U.S. at 858.  And in *Atwood*, the Seventh Circuit used those factors to determine whether a statutory recusal error was harmless on appeal. *Atwood*, 941 F.3d at 885.  The *Davis* standard for nonconstitutional errors requires more than a showing of extraordinary circumstances or that a statutory error was not harmless.  It is a "well-settled principle that to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal."  *United States v. Frady*, 456 U.S. 152, 166 (1982).  Even if the Court found that the error was not harmless under those factors, that would not suffice to meet the *Davis* standard.  *See* Brian R. Means, Federal Habeas Manual § 1:38 (May 2022 Update) (noting that the *Davis* "standard is more onerous . . . than the harmless error test applied to non-constitutional claims raised on direct appeal"); *United States v. Addonizio*, 442 U.S. 178, 184 (1979) ("It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.").  "There is a difference between reversing an error on appeal and correcting the error years later."  *Hawkins v. United States*, 706 F.3d 820, 824 (7th Cir. 2013).

Gherna has not shown that any violation of § 455(a) was a fundamental defect resulting in a complete miscarriage of justice.  His § 455(a) claim, therefore, does not warrant relief under § 2255 and it is denied.

### B.  Ineffective Assistance of Counsel

Gherna argues that the FPD provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution in two ways: first, by "failing to include claims [based on Judge Bruce's communications with the USAO] in direct appeals once the full scope of the *ex parte* communications was revealed"; and second, by "failing to properly secure" tolling agreements for Gherna to bring his claims in a motion under § 2255.  Counseled 2255 Mot. 23–24.

The Government argues that the first claim is meritless because the Seventh Circuit dismissed Gherna's appeal "several months before the USAO disclosed the emails" to litigants. Resp. 48.  It argues that Gherna "is hard-pressed to show that appellate counsel's performance was objectively unreasonable [for] failing to raise a claim based on facts unknown to her at the time." *Id.* at 48–49.  The Court agrees.  Counsel cannot be deemed ineffective for failing to raise a claim based on facts she did not know.

The Government argues the second claim is meritless because Gherna was covered by a tolling agreement for due process claims and because "the FPD could not have forced the [G]overnment to agree to include the appearance of bias claims in the tolling agreement." *Id.* at 49.  The Government makes other arguments against this claim as well, including that there is no evidence the FPD represented Gherna and that the FPD made a strategic decision not to preserve § 455(a) claims.  *See id.* at 49–53.  But the Court has identified a more fundamental problem with the claim—Gherna had no right to counsel beyond his direct appeal.  *See Coleman v. Thompson*, 501 U.S. 722, 756 (1991) ("[A] criminal defendant has no right to counsel beyond his first appeal . . . ."); *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ." (citation omitted)).  Thus, any deficient performance with

respect to securing postconviction tolling agreements does not create a Sixth Amendment violation.

### III.    Certificate of Appealability

When a district court enters a final order adverse to an applicant, it must issue or deny a certificate of appealability.  Rule 11(a), Rules Governing § 2255 Proceedings.  A court can grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Gherna has failed to make a substantial showing of the denial of a constitutional right, so the Court declines to issue a certificate of appealability.

**CONCLUSION**

Accordingly, Defendant-Petitioner John F. Gherna's *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, ECF No. 49, is MOOT, and his counseled Motion to Vacate Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 55, is DENIED.  His motion for a status conference, ECF No. 61, is MOOT in light of this order. The Clerk is directed to enter judgment and close the accompanying civil case, No. 2:20-cv-02042-SLD.

Entered this 27th day of March, 2023.

s/ Sara Darrow

SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
